UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11737-RWZ

DANIEL R. HUNT

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

<u>ORDER</u>

September 27, 2011

ZOBEL, D.J.

Plaintiff, Daniel R. Hunt ("Hunt"), purchased a disability insurance policy ("the policy") from defendant, Northwestern Mutual Life Insurance Company ("NM").   In 2004 he claimed partial disability benefits under the policy.  Defendant denied coverage and plaintiff brought this action.  He alleges (1) breach of contract for NM's alleged failure to pay the benefits to which he claims he is entitled under the policy; and (2) unfair and deceptive practices under Mass. Gen. Laws chs. 93A and 176D ("ch. 93A claims") for NM's alleged failure to reasonably, fairly, and promptly investigate and evaluate plaintiff's disability claim and to make an offer of settlement.  Defendant counterclaims for rescission, on the ground that Hunt knowingly made false representations of material fact on his insurance application.

Defendant moves for summary judgment on both of plaintiff's claims.[1]  Docket # 35.  The disposition of defendant's motion follows.[2]

---

[1] Defendant does not move for summary judgment on its rescission counterclaim. Docket # 37, n.1.

[2] Also outstanding are defendant's motion to preclude certain testimony by plaintiff's expert witness, Dr. Michael J. Mufson (Docket # 47) and several other

## I.    Background

Defendant issued the policy to Hunt effective January 26, 2001, the date on which plaintiff filled out the insurance application.  Docket # 37 Ex. 3.  Plaintiff paid the monthly premiums as required under the policy.  On October 1, 2004, he submitted a "Request for Disability Benefits" for partial disability due to narcolepsy for the period June 1, 2004, to the present.  Docket # 37 Ex. 7.  At the time he submitted this claim, he was self-employed as a computer network analyst.  Id.

NM required plaintiff to submit additional documentation in support of his claim, including an "Attending Physician's Statement" ("APS") from each of his medical providers who treated him during the period of claimed disability.  Docket # 37 Ex. 6. The APS submitted by Hunt's primary care physician, Dr. Bahige Asaker, lists a diagnosis of narcolepsy.  Docket # 37 Ex. 8.  In response to a question on the APS about any restrictions he imposed on Hunt's occupational duties or activities, Dr. Asaker noted: "Patient is able to perform his work as he tolerated [sic] depends on the level of alertness."  Id.

## II.    Analysis

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  "Where the record taken as a whole could not lead a rational trier of fact to find

motions in limine (Docket ## 67-72).  The court will address these motions prior to trial.

In addition, in their briefs the parties argue about the proper measure of damages for the breach of contract claim.  As this issue has no bearing on the court's disposition of defendant's summary judgment motion, the court will defer until trial the question of damages, unless the issue is otherwise raised by the parties prior to trial.

for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus.</u>
<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## A.  Breach of Contract Claim

The parties agree that to prevail Hunt must prove that (1) his disability resulted from
an accident or sickness; (2) he is unable to perform one or more but not all of the
material and substantial duties of a computer network analyst, or to spend as much
time working as a computer network analyst as before the disability; and (3) he has at
least a 20% loss of earned income due to his disability.  Docket # 37 at 13 and Ex. 3;
Docket # 41 at 15-16.

Defendant claims that Hunt cannot muster expert evidence to prove that
narcolepsy caused his alleged disability.  This argument fails given that Hunt's treating
physicians can testify about the effect of Hunt's medical state on his ability to work.
Although NM argues that none of Hunt's medical providers imposed any work
restrictions on Hunt because of narcolepsy, a rational jury could interpret Dr. Asaker's
notation in his APS (indicating Hunt's ability to perform work "as he tolerated depends
on level of alertness") as such a restriction.  Thus, there remains a disputed issue of
fact as to whether narcolepsy left Hunt partially disabled.

## B.  Ch. 93A Claims

Hunt claims that various acts by NM were "unfair or deceptive" under chs. 93A
and 176D.  These acts, however, constitute the same conduct at issue in his breach of
contract claim and defendant's rescission counterclaim.[3]  Thus, the disposition of

---

[3]     For example, NM paid Hunt $24,810.75 on what NM claims was an
"accommodation" basis, pending completion of their review of his claim.  Docket #37

Hunt's ch. 93A claims depends on the resolution the claims for breach of contract and rescission.  If Hunt fails to prove liability or if NM prevails on its rescission counterclaim, then Hunt's ch. 93A claims must fail.  If NM is liable under the policy, the court will then consider Hunt's ch. 93A claims, taking into account the evidence offered at a trial on liability and any additional evidence offered by the parties.

## III.    Conclusion

Defendant's motion for summary judgment (Docket # 35) is DENIED.  A number of motions to file additional and/or excessive briefs (Docket ## 36, 42, 52, and 64) are ALLOWED, reluctantly.


_____September 27, 2011_____                _____/s/Rya W. Zobel_____
             DATE                                              RYA W. ZOBEL
                                                     UNITED STATES DISTRICT JUDGE

---

Ex. 37.  As relief under its rescission counterclaim, NM seeks a return of these so-called "accommodation payments."  Docket # 5.  Among other things, Hunt alleges that NM knew that it was going to deny his claim before it made the payments, and that NM deceptively made the payments in order to enhance NM's alleged position as a victim of fraud before NM reported Hunt to the Massachusetts Insurance Fraud Bureau. Docket # 41 at 23-28.